## Supreme Court—General Term—First Department.

*January*, 1885.

## PEOPLE *v.* DONOVAN.

### MURDER IN THE SECOND DEGREE.—EVIDENCE.

Upon the trial of an indictment for murder, it appeared that defendant and four others went into a certain liquor saloon, from which one of their number, G., had been ejected on account of his threats and violent conduct on being refused liquor about three-quarters of an hour before; the said party going there, as appeared from the testimony of one of them, on the invitation of G., he stating that he "had been licked." Upon their arrival, G. asked for drinks, whereupon the bar-tender, W., drew a revolver, and on his doing so one of the party distributed billiard cues among his associates. Another member of the party went up to the deceased, R. and said, "this is

the —— —— —— — —— —— that went for a policeman," where-
upon defendant dealt the deceased two blows on the head with the
billiard cue, which he held in both hands, fracturing deceased's
skull, from the effects of which he died.  The defendant at once
left the state, remaining away until arrested.  On the trial he
denied all participation in the fracas, or that he was in the saloon at
the time it occurred.  It appeared that all of said party were mem-
bers of a so-called social club, which held its meetings in said
saloon.  *Held*, that the evidence was sufficient to uphold a convic-
tion of murder in the second degree, and that the testimony as to
G.'s first visit to the saloon alone and what then occurred, was ad-
missible as bearing on the question of motive.

APPEAL from a judgment of the General Sessions of New
York county, convicting defendant, Daniel T. Donovan, of
murder in the second decree.

Defendant was indicted in said court for murder in the first
degree, for the killing of one Joseph Rainer on January 14,
1884, and on March 7, 1884, the indictment was tried in said
court before Hon. HENRY A. GILDERSLEEVE, one of the judges
thereof, and a jury, who found the prisoner guilty of murder
in the second degree, whereupon he was duly sentenced by the
court to imprisonment in the state prison at hard labor for the
term of his natural life.

A motion for a new trial was made, from the order deny-
ing which, as well as the judgment herein entered, an appeal
was taken.

The facts fully appear in the opinion.

*Charles S. Spencer*, for the prisoner, appellant.—I.  The
evidence showed the commission of no higher offense than
manslaughter..  People *v.* Daly, 2 *N. Y. Crim. Rep.* 159.

II.  The testimony of the witness Wetteran as to what was
said and done by Gleason when defendant was not present nor
within hearing, and of which it was not shown that he ever
had any knowledge or information, was illegally admitted, and
the exception taken to it is good.

*Peter B. Olney*, district attorney, for the people, re-
spondent.

BRADY, J.—It appears from the evidence in this case that on the 14th of July last, and at No. 309 East 39th street in this city, and about half past five o'clock in the afternoon, five young men went into the liquor saloon there kept by one Fosdick, whose bar-tender was George Wetteran. One of these young men was the appellant Donovan. It also appears that about three quarters of an hour previously, one of their number, Gearon, had been in the saloon alone and had conducted himself in a disorderly and violent manner. He seems to have been intoxicated, and when refused liquor became very much excited, took off his coat and hat, and using profane language challenged the bar-tender to fight and attempted to strike him. He was finally put out of the saloon by the bar-tender, when he proceeded to break some of the windows of that apartment. Soon after, the party referred to entered the saloon, Gearon asked for drinks, whereupon the bar-tender pulled out a revolver; and when he did so Cummings went over and took billiard cues from a rack which he distributed to the party. It appears also that the party were invited by Gearon to take a drink, as one of them testifies, and that he asked the prisoner also with the others. And the witness was asked: " What did he say to you ?" His answer was : " He told us that he was licked, but he did not tell us where he was licked or by whom." They finally went to the saloon upon Gearon's invitation. It appears that the deceased Rainer had gone for a policeman. He returned and was standing in the saloon at the pool table as the party entered. The first man, whom the witness Wetteran said was one Burke, went immediately up to the deceased and said to him, " This is the God damn son of a bitch who went for a policeman "—whereupon Donovan who stood behind him dealt the deceased two blows upon his head with the cue which he had in his hand, from the effects of which the victim died. The billiard cue was held in both hands and was so violently employed as to produce a fracture of the skull.

The prosecution, for the purpose of showing the motive which might have actuated the appellant, proved what occurred when Gearon went into the saloon earlier in the day, his conduct there and his ejection from it, which was objected to, but admitted upon the proposition that it would be established

beyond reasonable doubt that Donovan was advised of the occurrence, and had, with others, united with Gearon for the purpose of revenging the insult that was offered to his friend. It appeared also that Gearon and the appellant were members of what was known as the "Kip's Bay Coterie," described by the appellant as a social club, the meetings of which took place in the saloon in which the deceased was fatally injured.

The jury, doubtless, in consideration of all the facts and circumstances, arrived at the conclusion, which they were certainly justified in doing upon the evidence, that Gearon, feeling himself much injured by the refusal to give him liquor, had communicated the fact to certain of his friends and acquaintances, including Donovan, and had invited them to the saloon for the purpose of repeating the request for liquor, which he did, and with the design of avenging the insult which was put upon him. The testimony was entirely uncontradicted that the bar-tender was protected from any injury by the exhibition of his pistol, which resulted in Gearon's party arming themselves with cues, and that as soon as the observation was made by Burke or some other person as to the deceased's attempt to find a policeman, Donovan, without asking any information why he had gone for the policeman, struck the fatal blows—a circumstance which in itself would indicate a knowledge on his part of the grievance of which Gearon complained. It is beyond all comprehension that he should have assaulted the deceased upon the mere statement that he had done what was a perfectly lawful and commendable act, namely, essayed to obtain a policeman, when there was a reasonable apprehension to believe that lawlessness was intended by Gearon or any other person. But that he knew what was meant by the observation referred to is certain beyond all reasonable doubt, because one of the party who was, to a certain extent at least, an accomplice, stated, as already mentioned, that Gearon, when he gathered his party together, informed them that he had been licked, although he did not say where, according to the statement of the witness.

The appellant denied having struck the blows, denied having been in the saloon when they were dealt, and indeed

generally, any participation in the fracas which resulted in the death of the deceased. The criticism to be pronounced upon his evidence is that it undoubtedly went too far. He had, according to his own evidence, seen too little, and he knew too little. He had seen nothing and knew nothing at all to his prejudice. It was a general denial. It is not at all improbable, therefore, that the jury disregarded his evidence entirely, and assumed that his testimony, taken in connection with the fact which he himself admitted, namely, that after the evening upon which the deceased was fatally injured he had gone to Baltimore in the state of Maryland, and there remained until arrested, was totally unreliable.

The prisoner, upon the trial, had the benefit of a perfectly fair and impartial charge. The legal propositions involved in his prosecution were all clearly stated to the jury, and each request made on his behalf by his counsel was complied with. There is therefore, no exception to the charge, and, indeed, the only exception to which our attention has been called by the learned counsel for the appellant is as to the evidence of the circumstances attending Gearon's appearance in the saloon in the early part of the day, and prior to the fatal occurrence, and to which reference has already been made. The testimony was admissible as bearing upon the question of motive. If it had not been connected with the prisoner in such a way as to make it reasonable beyond doubt, that he was advised of them and influenced by them, it would be deemed the duty of this court to grant a new trial. But such is not our opinion upon a consideration of the whole case. It is thought, as already suggested, that he was advised of the occurrences of the morning —particularly of the insult to Gearon, as the latter supposed his treatment by the bar tender to have been—and had united in the efforts to enforce some atonement by the bar-tender for his conduct.

This combination of men and circumstances did not constitute a brawl and does not present any of the elements of that disreputable kind of occurrence, because the bar-tender refused to furnish the drinks which form, it would seem, an indispensable element of it. The facts and circumstances present the entire occurrence as one which was based, as already suggested,

upon a determination to revenge an insult in which it was supposed the deceased had participated, because of his attempt to get a policeman.   When the passion which had been excited could not be expressed upon Wetteran, because of his preparation for defense, it was expressed upon the deceased as soon as the opportunity was given, and of which the appellant immediately availed himself, and, as already mentioned, under circumstances warranting the conviction that he knew why the deceased had gone for a policeman.   It is impossible to say, judging from the manner in which the deceased was killed, the weapon used, the part of the body of the deceased struck, and the manner of dealing the blows, that the appellant did not intend to kill the deceased at the moment of striking him. Whether he so intended or not, was purely a question of fact for the jury, to be disposed of by them, and their conclusion upon the subject cannot be disturbed.

The appellant, therefore, though quite young, finds himself the victim and sacrifice of a social club, the organization of which does not seem to have been for any creditable purpose, and the result of which is to deprive him of his liberty for a number of years.   It would be a very satisfactory result of this conviction to know its effect had been to dissolve kindred associations and to prevent their formation, but it is feared that no such good result will grow out of it.

It becomes our duty, for the reasons assigned, to affirm the judgment.   Ordered accordingly.

DAVIS, P. J., and DANIELS, J., concur.